IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNIFER WILLISON,

      Plaintiff,

  v.                                         Civil Action 2:19-cv-3603
                                               Magistrate Judge Jolson

NELNET, INC.,

      Defendant.

**OPINION AND ORDER**

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 9), is before the Court on Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment Against Plaintiff (Doc. 2) and Defendant's Motion to Strike Plaintiff's Untimely Response (Doc. 4). As for the Motion to Strike, Defendant notes that Plaintiff responded to the summary judgment motion one week after the response deadline and asks the Court to strike Plaintiff's response as a result. (*See generally* Doc. 4). Despite Plaintiff's untimely response, (*see* Doc. 3), the Court prefers to consider this case on its merits. Accordingly, Defendant's Motion to Strike is **DENIED**. But for the following reasons, Defendant's Motion, which the Court has converted to a Motion for Summary Judgment is **GRANTED**.

**I.      BACKGROUND**

This case stems from Defendant's alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff Jennifer Willison is an Ohio resident who, in May 2005, took out roughly $25,000 in student loans. (*See* Doc. 1-2 at 15). Defendant Nelnet, Inc. ("Nelnet") is a financial services company that facilitates the repayment of student loans. (*See generally* Doc. 2-1).

On May 17, 2005, Plaintiff borrowed a total of $25,045 through two separate student loans (the "Loans"). (*See* Doc. 1-2 at 15). Plaintiff subsequently defaulted on the Loans. (Doc. 3-1, ¶ 8). On June 9, 2016, in an effort to cure her default, Plaintiff entered into a "Rehabilitation Agreement" with non-party Performant Recovery Inc. (Doc. 1-2 at 3). She agreed to make nine monthly payments of no less than $5.00 over a ten-month period, until "notified that [her] loan(s) [have] been sold to a participating rehabilitation lender." (*Id*.). Plaintiff performed and made her ninth and final payment on February 2, 2017. (*See* Doc. 2-1, ¶ 6; Doc. 2-2). Shortly thereafter, on February 15, 2017, Deutsche Bank, the then-lender for the Loans, sold the Loans to Suntrust Bank. (*See* Doc. 12 at 11). Nelnet became the new servicer for the Loans on that date. (Doc. 2-1, ¶ 8).

After acquiring the Loans for servicing, Nelnet sent Plaintiff her account balance and new repayment schedule. (Doc. 2-3). But Plaintiff thought her account balance looked off. (Doc. 3-1, ¶ 16 (asserting that it reflected "unjustified" collections)). So she asked her attorney Eric E. Willison to look into the matter. (*Id*., ¶ 17). Mr. Willison sent Nelnet a demand letter on March 10, 2019, requesting financial documents and instructing "all correspondence involving [Plaintiff]" be "direct[ed]" to him. (Doc. 1-1). About two business weeks later, Nelnet responded to Mr. Willison's letter. (Doc. 1-2). But Nelnet sent its response to Plaintiff—not Mr. Willison. (*See id*.). That correspondence led to this lawsuit. (*See generally* Doc. 1). Plaintiff alleges that Nelnet violated the FDCPA by "directly contacting [her] regarding her loan after counsel had given Nelnet notice of the fact that he was representing her with regard to the amount due under the loan." (*Id*., ¶ 8).

Nelnet filed its Motion to Dismiss, or in the alternative, Motion for Summary Judgment, on December 16, 2019. (Doc. 2). Nelnet asserts that, because it is not a "debt collector," it is not

subject to the FDCPA. (*See generally id.*). And without the FDCPA, says Nelnet, Plaintiff has no case in federal court. (*See id.*). Because the parties' briefing relies on evidence outside of the pleadings, the Court has converted Defendant's Motion to one for summary judgment. (*See* Doc. 11). To ensure a complete record, the Court directed the parties to submit any additional evidence. (*Id.*). Defendant did so, (*see* Doc. 12), and Plaintiff did not. The matter is now ripe for resolution.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**III.   DISCUSSION**

This case turns on whether Plaintiff can establish that Nelnet is a "debt collector" as defined by the FDCPA. A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Liability under the FDCPA "attach[es]" to only "those who meet the statutory definition of a 'debt collector.'" *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003).

It is Plaintiff's burden to establish that Nelnet is a debt collector. *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 597 (E.D. Mich. 2014). To meet that burden, she must show that her Loans were in default at the time Nelnet acquired them for servicing or that Nelnet treated her Loans as if they were in default. *Bridge v. Ocwen Fed. Bank, FSB*, 682 F.3d 355, 362 (6th Cir. 2012). This rule "is based on the premise that an entity that acquires a current, non-defaulted debt in order simply to continue servicing it is acting much like the original creditor that created the debt," but, "[o]n the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector." *Kloss*, 996 F. Supp. 2d at 597 (quotation marks and citation omitted).

But courts also look beyond the black and white. Indeed, the FDCPA applies not only to entities that "acquired a debt in default" but also to entities that "treated the debt as if it were in default at the time of the acquisition." *Bridge*, 681 F.3d at 362. In other words, "a FDCPA defendant cannot escape coverage under the Act" by relying on a technicality, like a "clerical mistake, or other error," when, all the while, attempting to collect a defaulted debt. *Id*. at 362–63.

As explained below, Plaintiff has failed to meet her burden to establish that Nelnet is a debt collector.

### A. Default Status at the Time of Acquisition

To begin, Plaintiff has failed to provide evidence that the Loans were in default when Nelnet acquired them. Rather, she attempts to parse contractual language. In her view, the following language from the Rehabilitation Agreement carries the day:

> I understand that **after** completion of the sale of my loan(s) to a rehabilitation lender:
>     a.  my loan(s) **will be** removed from default status

(Doc. 3 at 4) (emphasis added). Relying on this language, Plaintiff argues:

> making the nine payments does not take the loan out of default status. Rather, it makes it possible to transfer the loan to Defendant Nelnet. Defendant Nelnet will then (and only then, after transfer) remove the loan from default status. So according to the Rehabilitation Agreement Terms and Conditions, the loan transfers to Defendant Nelnet, and then its status changes. Defendant still received the debt while it was in 'default status' and then 'removed' it 'from default status.' But under the FDCPA, once you receive a debt while it is in default status, you are a debt collector, not a creditor, and the FDCPA applies to you.

(*Id*. at 5).

In deciding whether a loan was in default when an entity acquired it, a court may refer to the parties' contractual definition of "default." *See, e.g.*, *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-CV-273, 2008 WL 618788, at *5 (S.D. Ohio Mar. 3, 2008) (noting that the parties' contract considered a loan to be in default when a payment was 45 days overdue). But that is not what we have here. Rather, Plaintiff attempts to add favorable language to the Rehabilitation Agreement that is simply not there. The agreement states only that the Loans, once sold, will no longer be considered in default. (Doc. 1-2 at 3). Importantly, it does not say what Plaintiff wants—that a person's loans remain in default until the loan servicing entity removes them from default. Accordingly, Plaintiff has not provided evidence that, when Nelnet acquired the Loans, they were still in default. So Plaintiff has failed to carry her burden establishing Nelnet as a debt collector. *See, e.g.*, *Bryan v. Bank of Am. Home Loans Servicing*, LP, No. 3:10 CV 959,

5

2011 WL 5526071, at *6 (N.D. Ohio Nov. 14, 2011) ("Defendant does not have to show that the loan was not in default when acquired, but rather Plaintiffs must show that the loan was in default at such time.").

Further, the Court notes that Nelnet, despite not having the burden to do so, sets forth uncontroverted evidence establishing that Plaintiff's Loans were no longer in default on the day it acquired them for servicing. (*See* Doc. 12 at 10–12). Specifically, Nelnet provides authenticated data from the National Student Loan Data System ("NSLDS") that, on February 15, 2017, the status of the Loans changed from "defaulted" to "in repayment." (*Id*. at 11). Also, on February 15, 2017, the Loans were "repurchased" by Suntrust Bank and, pertinent here, Nelnet acquired them for servicing. (*Id*.).

It appears, based on her argument, that Plaintiff would like a time stamp indicating precisely when the Loans switched from "default" to "in repayment." (*See* Doc. 3 at 4–5). But the law does not require that. *See, e.g.*, *In re Tolliver*, No. 09-21742, 2012 WL 2952239, at *21 (Bankr. E.D. Ky. July 19, 2012) ("If Tolliver was performing on her forbearance plan at the time Ocwen purchased the Loan, Ocwen is not a debt collector covered under the FDCPA."). And even if it did, it would be Plaintiff's job to supply it. *See, e.g.*, *Bryan*, 2011 WL 5526071, at *6 ("Because Plaintiffs have not presented evidence sufficient to demonstrate to the Court that they could show that Defendant was a 'debt collector' at trial, the Court will grant Defendant, and deny Plaintiffs, summary judgment[.]").

### B. Nelnet's Conduct

Because Plaintiff has not established that Nelnet acquired the Loans when they were in default, her only remaining shot at defeating summary judgment would be to show that Nelnet

6

treated the Loans as if they were in default. *See Bridge*, 681 F.3d at 362. Plaintiff has not shown that either.

And it is worth noting that the uncontroverted evidence in this case reveals that Nelnet did not treat the Loans as if they were default. Indeed, on February 15, 2017–the date Nelnet acquired the Loans—Nelnet sent Plaintiff a letter "contain[ing] important details regarding a change in the status of [her] federal student loans" and explicitly noting in bold font, "[t]his is not a billing statement." (Doc. 1-2 at 13). It appears from the record that, upon receiving this letter, Plaintiff stopped making payments on her Loans. (*See id*. at 1). Only then, about a month later, did Nelnet inform Plaintiff of an outstanding balance. (*See id*. (stating that Plaintiff's account was 31 days past due)). But "[a] party who obtains a debt before it is in default does not become a debt collector under the FDCPA based on its subsequent attempts to collect that debt." *Martin*, 2008 WL 618788, at *5. And the record contains no evidence that Nelnet, upon acquiring the Loans, treated them as if they were in default.

Because Plaintiff has not raised a genuine issue of material fact as to whether Nelnet is a debt collector, Nelnet is entitled to summary judgment, and this case is dismissed in its entirety. *See, e.g.*, *Brown v. Saxon Mortg. Servs., Inc.*, No. 2:05-CV-141, 2005 WL 3244295, at *3 (S.D. Ohio Nov. 30, 2005) (concluding that there was no "subject matter jurisdiction under the FDCPA" where "[p]laintiff [ ] failed to meet her burden of submitting evidence to show" that her loan was in default at the time defendant began servicing the loan).

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment Against Plaintiff (Doc. 2) is **GRANTED**, and Defendant's Motion to Strike Plaintiff's Untimely Response (Doc. 4) is **DENIED**.

IT IS SO ORDERED.

Date:  April 20, 2020                                         /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE